IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SUSAN E. ROEHM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 12-763-LY |
| | § | |
| TRAVIS COUNTY, et al., | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF ROEHM'S RESPONSE TO MOTION TO DISMISS**

Plaintiff Susan Roehm suffered a horrendous attack from a dog that, pursuant to Travis County policy, was trained to bite any person it was commanded to find. The dog was intentionally deployed by Deputy James D. Moore—without proper training or supervision from Travis County or Sheriff Greg Hamilton—against Roehm, even though it was actually known that such a deployment would cause significant injury or death.

Rather than accept these allegations as true, defendants parse words, omit key facts, and take phrases out of context in an attempt to preclude Roehm from bringing her valid constitutional claims. Indeed, defendants go so far as to miscite a Fifth Circuit case to suggest that a dog bite can never give rise to a constitutional claim—despite multiple federal cases in Texas and across the country holding otherwise.

The motion raises a host of fact issues that must be decided by a jury and make dismissal improper. The motion also should be denied as a matter of law because Roehm has sufficiently pleaded, with adequate facts, all of the required elements of each of her claims and prior precedent in the Supreme Court, Fifth Circuit, and other circuit courts establish her constitutional rights and defendants' violations of those rights.

Plaintiff Roehm, therefore, respectfully requests that the motion to dismiss be denied.

## RELEVANT FACTUAL BACKGROUND

On the night of February 20, 2012, Deputy Moore arrived, uninvited, at the site where members of the Travis County Search & Rescue team were training. DKT. #1 at 2. Without preclearing his unannounced visit with any Search & Rescue supervisor or leader, Deputy Moore requested to participate in the training with the County's dog. *Id*. at 2-3. At no time did Deputy Moore inform Roehm that the County's dog was bite-trained; instead he intentionally and deliberately withheld this information. *Id*. at 3. Roehm would not have participated in any training with Deputy Moore if he was not a law enforcement officer and if she had known that the dog was bite-trained. *Id*.

After Deputy Moore ensured that Roehm was enclosed in a bark barrel, he gave the dog the command to find her. As the dog was trained by the County to do, it then searched for Roehm, detained her inside the barrel, and seized her, by biting her face and dragging her completely outside the barrel. *Id*. at 4-5. The dog behaved exactly as it was trained. During these events, and consistent with County policies, Roehm's liberty was completely restricted. *Id*. at 5.

The course of events that unfolded were not unexpected to defendants. Deputy Moore knew that his dog was bite-trained, he had previously examined the barrel and saw that it could be held closed only by minimal force, and he never told Roehm that his dog was bite-trained. *Id*. at 3-4. But despite having a bite-trained dog that the County and Sheriff Hamilton knew was likely to cause serious harm or death to anyone against whom the dog was deployed, the County and Sheriff Hamilton never trained Deputy Moore in the proper use of the dog, which ultimately resulted in Roehm's significant, disfiguring, and long-term injuries. *Id*. at 3, 5.

## STANDARD OF REVIEW

The Court is familiar with the strict standards governing this motion. A motion to dismiss under Rule 12(b)(6) for failure to state a claim is viewed with disfavor. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). "The ultimate question" when addressing such a motion "is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). "To survive a motion to dismiss," a complaint need only contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (cite omitted). Plausibility, in turn, requires only "'enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008) (cite omitted). "Liberal discovery rules and summary judgment motions, not motions to dismiss, should be used to define disputed facts and issues and to dispose of unmeritorious claims." *Thompson v. Homecomings Fin.*, 2005 WL 3534234, at *2 (N.D. Tex. 2005) (cite omitted); *see also Simmang v. Tex. Bd. of Law Examiners*, 346 F. Supp. 2d 874, 885 (W.D. Tex. 2004) (approving magistrate judge's report and recommendations denying motion to dismiss based on existence of factual issue).

In determining whether qualified immunity is applicable, a court undertakes a two-step analysis. First, the court evaluates whether a "plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002) (cite omitted). If a constitutional violation occurred, the court then determines whether the defendant's actions violated established statutory or constitutional rights of which a reasonable person would have known. *Id*. at 739. In other words, the Court must ask "whether the law lacked such clarity that it

would be reasonable for an officer to erroneously believe that his conduct was reasonable." *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009). "The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (cite and quotes omitted).

**ARGUMENT AND AUTHORITIES**

**I.    THE MOTION RAISES MULTIPLE FACT QUESTIONS TO BE RESOLVED BY THE JURY.**

A motion to dismiss is not a proper vehicle to decide disputed fact issues. *See Thompson*, 2005 WL 3534234, at *2; *see also Simmang*, 346 F. Supp. 2d at 885. And because defendants raise at least five issues of fact that will need to be decided, their motion should be denied.

First, defendants contest the effects of Deputy Moore's command to "search." Motion at 2. Although Roehm alleged that this command required the dog to find and bite her, DKT. #1 at 6, defendants suggest that this was an innocuous order, Motion at 8. What the command meant to the dog thus is a fact question that bears on the issue of whether the County and Deputy Moore violated the Fourth Amendment's prohibition on the use of excessive force.

Second, defendants contend that Roehm "voluntarily" participated in the bark barrel training and that this somehow precludes her claim for excessive force. Motion at 9. But Roehm participated in the training because Deputy Moore was a law enforcement officer and specifically alleged that she would <u>not</u> have participated in the training if she had known that the County's dog was bite-trained. DKT. #1 at 2-3. Defendants thus have created an issue of material fact as to the voluntariness of Roehm's actions and whether any consent was obtained through deceit, trickery, or misrepresentation by Deputy Moore. *See Groom v. Fickes*, 966 F. Supp. 1466,

1477 (S.D. Tex. 1997) ("a consent search is unreasonable under the Fourth Amendment if the consent was induced by deceit, trickery or misrepresentations made by an agent").

Third, defendants assert that Deputy Moore did not restrain Roehm, despite her alleging that she was unable to leave the barrel, protect, or take care of herself after the County's dog arrived. Motion at 13; DKT. #1 at 8. Defendants thus put the extent of Roehm's restraint and the voluntariness of her actions (as well as who caused the restraint) at issue—fact questions that bear directly on her due process claims.

Fourth, defendants dispute Sheriff Hamilton's and Deputy Moore's intent to cause Roehm's horrific injuries. Motion at 7. But Roehm explicitly alleged that Hamilton and Moore intended to cause Roehm harm. DKT. #1 at 7-9. And besides, what Sheriff Hamilton and Deputy Moore intended is a question of fact that must be decided by a jury.

Fifth, defendants dispute Roehm's injuries were caused by negligence, not an intentional tort. Motion at 10. This is best encapsulated in their argument that her statement that Deputy Moore "knew, or should have known, that Roehm was in serious danger" states a negligence standard. *Id*. at 11. Not only does that statement not go to negligence, as opposed to due process violations, but defendants have put Deputy Moore's knowledge at issue.

All these fact questions are for a jury to decide and not subject to a motion to dismiss.

## II.    ROEHM HAS PLEADED A WELL-ESTABLISHED VIOLATION OF HER CONSTITUTIONAL RIGHTS BASED ON EXCESSIVE FORCE.

Roehm has adequately pleaded constitutional injury based on objectively unreasonable force used by Deputy Moore and the County.

Claims of excessive force are analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v. Connor,* 490 U.S. 386, 395 (1989). To establish a claim for excessive force, Roehm will demonstrate that she was seized and sustained an injury, which

resulted directly and only from use of force clearly excessive to the need, and the force used was objectively unreasonable. *See Flores v. City of Palacios,* 381 F.3d 391, 399 (5th Cir. 2004). In analyzing an excessive force claim, courts are to "[pay] careful attention to the facts and circumstances of each particular case," including whether the person injured posed "an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The courts, must judge "reasonableness" from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

Defendants do not question that Roehm has properly alleged the requisite elements. Instead, they argue only that a dog bite cannot give rise to a constitutional injury and that Deputy Moore never intended for the County's dog to cause such horrific injuries to Roehm. Defendants are wrong on both counts.

### A. A Dog Bite Can Establish Constitutional Injury.

Whether a dog bite can cause constitutional injury has been decided in this Circuit and across the country.

The Fifth Circuit has recognized a constitutional right to bodily integrity "vouchsafed by the Fourteenth Amendment" against state action. *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451-52 (5th Cir. 1994) (en banc). This comports with other courts' jurisprudence. *See, e.g.*, *White v. Rochford*, 592 F.2d 381, 383 (7th Cir. 1979) ("Although it would be impossible to catalogue and to describe precisely each 'liberty' interest protected by the Due Process Clause, it can hardly be doubted that chief among them is the right to some degree of bodily integrity."). In fact, among "the historic liberties so protected was a right to be free from and to obtain judicial

relief, for unjustified intrusions on personal security." *Ingraham v. Wright*, 430 U.S. 651, 673 (1977).

It also is established that an officer who improperly deploys a dog can be liable based on a claim of excessive force. For example, an officer's release of a police dog that bit a suspect was held to be objectively unreasonable because the suspect had made no threatening actions and was not actively resisting at the time of the release. *Calton v. City of Garland*, 2004 WL 2965005, *3 (N.D. Tex. 2004). As that court held, "case law clearly established [plaintiff's] right to be free from the alleged use of excessive force." *Id*. at *4. Moreover, the court held that no reasonable officer could conclude that the "release of the police dog under the facts alleged by [plaintiff] were constitutionally permissible." *Id*. As another court explained,

> When an excessive force plaintiff shows that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw, the official is not entitled to the defense of qualified immunity.

*Priester v. City of Riviera Beach*, 208 F.3d 919, 923-24, 926 (11th Cir. 2000) (cite and quotes omitted) (denying defense motion for summary judgment based on qualified immunity).

Similarly, in *Ballard v. Hedwig Village Police Department*, the court held that a "reasonable officer could conclude that a law enforcement officer who allows his police dog to bite an essentially helpless inmate during a prison shakedown without provocation violates the Fourth Amendment." 2009 WL 2900737, at *9 (S.D. Tex. 2009) (cite omitted). "Even if case law does not clearly establish plaintiff's rights under these facts, the Court holds that no reasonable officer could conclude that the release of the police dog under the facts alleged by plaintiff was constitutionally permissible." *Id*. The court thus denied the defense motion for summary judgment based on qualified immunity.

Moreover, in determining whether a right is clearly established, a court is not limited to precedent from the Supreme Court or the Fifth Circuit, as a right can become established either through cases that constitute binding authority or on the basis of a consensus of persuasive cases from other jurisdictions. *See McClendon v. City of Columbia*, 305 F.3d 314, 329 (5th Cir. 2002) (en banc) ("In light of *Wilson* [*v. Layne*, 526 U.S. 603 (1999)], we must consider both this court's treatment of the state-created danger theory and status of this theory in our sister circuits . . . ." (alteration in original)).

Other jurisdictions are in accord that a dog bite can establish constitutional injury. For example, the Fourth Circuit has repeatedly held that an officer commits a constitutional violation for excessive force when a person is improperly seized by a police dog. *See, e.g.*, *Vathekan v. Prince George's Cnty.*, 154 F.3d 173, 178-79 (4th Cir. 1998); *Melgar ex rel. Melgar v. Greene*, 593 F.3d 348, 354 (4th Cir. 2010). Similar case law can be found in other jurisdictions. *See, e.g.*, *Mendoza v. Block*, 27 F.3d 1357, 1362 (9th Cir. 1994) ("[N]o particularized case law is necessary for a deputy to know that excessive force has been used when a deputy sics a canine on a handcuffed arrestee who has fully surrendered and is completely under control."); *Priester*, 208 F.3d at 927.

*Calton*, *Ballard*, and numerous cases in other circuits make clear that deploying a bite-trained dog on an unarmed and non-dangerous civilian violates that civilian's constitutional rights. The fact that the events in question involved a training exercise does not shield defendants from liability. *See United States v. Lanier*, 520 U.S. 259, 270 (1997) ("[G]eneral statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has

[not] previously been held unlawful." (cite and quotes omitted; second alteration in original); *Kinney*, 367 F.3d at 350 ("The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" (cite and quotes omitted)). Indeed, there simply is no case law that would support an officer's use of a bite-trained dog against an unarmed and non-dangerous civilian that would permit defendants to claim that such an action was reasonable.

Defendants wrongly cite *Cochran v. City of Deer Park*, 108 F. App'x. 129 (5th Cir. 2004), to suggest that a dog bite cannot be "a use of force under Fifth Circuit precedent." Motion at 9. In fact, at no point did the Fifth Circuit suggest that a bite from a police dog deployed against a person would not give rise to a constitutional claim. Instead, in *Cochran*, the Court held that an officer could not be held liable for a police dog biting a *different* person than whom the dog was sent to seize. 108 F. App'x. at 130. There was no use of intentional force against the bystander because the dog was not sent to seize her, but rather a suspect against whom such force could be deployed constitutionally. *Id*. In contrast, here Roehm specifically pleaded that Deputy Moore commanded his dog to seize her and when the dog did so, following its County training, it caused grievous harm. DKT. #1 at 6. Therefore, Roehm properly alleged a viable Fourth Amendment violation based on excessive force, and *Cochran* is not to the contrary.

What's more, regardless as to whether the right was clearly established by a prior case with exactly the same facts, no reasonable officer could have possibly believed that the Constitution would permit him to deploy a bite-trained dog on an unarmed and non-dangerous civilian. *See Mack v. City of Abilene*, 461 F.3d 547, 556 (5th Cir. 2006) (without identifying any case law on point, holding that no reasonable officer could believe that a random search of a

vehicle was authorized under the Constitution); *see also McDonald v. Haskins*, 966 F.2d 292, 295 (7th Cir. 1992) ("It would create perverse incentives indeed if a qualified immunity defense could succeed against those types of claims that have not previously arisen because the behavior alleged is so egregious that no like case is on the books."). Thus, even without a case directly on point, "it would [not] be reasonable for an officer to erroneously believe that his conduct was reasonable." *Lytle*, 560 F.3d at 410.

### B.  Deputy Moore Intentionally Deployed The County's Dog.

Defendants also incorrectly claim that Deputy Moore's intent to inflict the exact injuries Roehm suffered is relevant to her Fourth Amendment claim. But in fact, the Supreme Court explicitly removed subjectivity from the equation:

> As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.

*Graham,* 490 U.S. at 397.

The Fourth Circuit has addressed this in a similar context and held that even though the officer may not have intended for the police dog to bite the person, a seizure had occurred that gave rise to a violation of the victim's rights under the Fourth Amendment.

> While we have no doubt that the bite was unintended, we nevertheless agree with the district court that [the plaintiff] was seized. We have noted that a seizure occurs even if officers purposely detain a person under the mistaken impression that he is someone else, and it similarly follows that a seizure occurs if police purposely detain a person but somehow use more force than intended.

*Melgar*, 593 F.3d at 354 (cite and quotes omitted). The court went on to state, "The fact that the seizure did not occur in quite the manner Officer Greene had envisioned does not change this fact, especially since [the police dog] was trained to bite any individual he found when tracking." *Id.*

As in *Melgar*, whether Deputy Moore intended to harm Roehm in the precise way he did is irrelevant, since he "chose to use a dog conditioned to bite its target when found and thus cannot claim that there was no seizure when the dog he set in motion behaved exactly as it was trained to do." *Id.* at 355. He deployed his dog to find and seize Roehm. His actions were not objectively reasonable, and her claim for excessive force is viable.

Defendants misapply the Supreme Court's statement that a Fourth Amendment seizure occurs "only when there is a governmental termination of freedom of movement *through means intentionally applied*," *Brower v. County of Inyo,* 489 U.S. 593, 596-97 (1989) (emph. in orig.), to suggest that Deputy Moore had to intend his actions to cause the exact injuries inflicted on Roehm. Motion at 7-9. Rather than discussing whether the harm was intended, this quote applies to whether there has been a seizure. And defendants do not challenge that the seizure was intentional. Regardless, Deputy Moore's deployment of the dog was a deliberate use of force because he knew that if the dog made physical contact with Roehm, it would bite and hold her.

Roehm has pleaded that Deputy Moore commanded the County's dog to "seize" her. DKT. #1 at 6. Contrary to defendants' assertions, she also specifically pleaded that he intentionally deployed the County's dog through the command to "search" and that such a command required the dog, pursuant to its County training, to find, bite, and hold Roehm—terminating her freedom of movement through means intentionally applied. *Id.* at 4. This is the same type of command that the Fourth Circuit has held to cause a dog to seize a victim. *See Vathekan*, 154 F.3d at 178. ("By giving the command "Find him!", Simms intended the dog to find anyone in the house. It is undisputed that once that command was given, the dog would bite *anyone* it found.").

A seizure occurs "if in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Brendlin v. California,* 551 U.S. 249, 255 (2007). As Roehm has properly asserted, she did not feel free to leave the barrel at any time after the County's dog arrived. DKT. #1 at 4. Thus, she was seized once the dog was immediately outside the barrel. But regardless of whether she was seized at this point, there can be no doubt that she was seized once the dog bit into her face and, pulling her by the skin on her face, then dragged her several feet outside the barrel. And, as she has pleaded, the biting of her face was force excessive to any possible need. Roehm thus has sufficiently pleaded a claim for violation of her Fourth Amendment rights due to excessive force against Deputy Moore.

Additionally, the County never contests that it has an official policy, practice, or custom of using bite-trained dogs to search and seize suspects. Nor does it challenge that this policy, practice, or custom caused Roehm's injuries. Therefore, because she has sufficiently alleged that it was the County's policy of having bite-trained dogs that was the moving force behind this constitutional violation, she also has sufficiently alleged this claim against the County. *See Collins v. City of Harker Heights*, 503 U.S. 115, 123 (1992) (in *City of Canton v. Harris*, 489 U.S. 378 (1989), "we rejected the city's argument that only unconstitutional policies can create municipal liability under the statute"); *Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994) ("City policy need only cause [the] constitutional violation; it need not be unconstitutional per se.") (cite and quotes omitted).[1]

---

[1] Rather than challenge that the County has a custom, policy, or practice of using bite-trained dogs, defendants argue only that "[i]solated events are not sufficient to establish a custom." Motion at 8. But defendants' cited case, *Ramie v. City of Hedwig Village*, stands only for the proposition that an isolated event is not sufficient to establish a custom on its own—not that a single event effectuating an established official policy, practice, or custom is insufficient. 765 F.2d 490, 493 (5th Cir. 1985) (noting that there was no policy and that "[a]ny abusive aspect of the interrogation of Ramie would not, therefore, alone prove an objectionable city policy"). Because Roehm has alleged that the County had a long established policy, practice, or custom of using bite-trained

### III. ROEHM SUFFICIENTLY ALLEGES THAT THE COUNTY AND SHERIFF HAMILTON FAILED TO TRAIN AND SUPERVISE DEPUTY MOORE, WHICH FAILURE CAUSED HER INJURIES.

To incur liability on a claim for failure to train, there must have been (a) a failure to train or supervise the officers involved, (b) a causal connection between the failure and the alleged violation of the plaintiff's rights, and (c) deliberate indifference to the plaintiff's constitutional rights. *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001). "[T]he failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Canton*, 489 U.S. at 390.

Roehm has alleged that the County and Sheriff Hamilton failed to train or supervise Deputy Moore, evidenced by his request to participate, without authorization, in the Search & Rescue exercise, his use of a bite-trained dog against a helpless citizen, and his lack of control after ordering the dog to find and seize her. DKT. #1 at 3-4, 7. Roehm also properly alleges that it was this lack of training that caused the constitutional violations. *Id.* at 5, 7. Additionally, because the County and Sheriff Hamilton knew that the use of a bite-trained dog was likely to cause significant harm or death to anyone the dog was deployed against, their failure to train and supervise constituted deliberate indifference to Roehm's constitutional rights. *Id.* at 3, 7.

Defendants do not seriously challenge that the County and Sheriff Hamilton failed to train Deputy Moore. Instead they state only that "Roehm fails to allege and cannot prove" her claim. Motion at 12. Not only did she properly allege her claim, but whether she can prove her claim is a question for the jury, involving multiple fact issues. Moreover, defendants again assert only that she cannot prove her claim because she did not suffer a constitutional injury. As

---

dogs and that this policy, practice, or custom was the moving force behind the constitutional violations, *Ramie* is inapposite.

explained above, Roehm suffered from a constitutional injury, behind which the County's policy and Sheriff Moore's failure to train was a moving force.

In addition, the County and Sheriff Hamilton were deliberately indifferent to Roehm's constitutional rights in their failure to train. "We think it is clear from the Court's decisions in *City of Canton*, 489 U.S. at 380 & 387, and *Bryan County* [*v. Brown*, 520 U.S. 397 (1997)], that, under certain circumstances, §1983 liability can attach for a single decision not to train an individual officer even where there has been no pattern of previous constitutional violations." *Brown v. Bryan County,* 219 F.3d 450, 459 (5th Cir. 2000). In this case, "it was obvious that the offending officer in question was 'highly likely to inflict the particular injury suffered by the plaintiff,'" *id*. at 461 (quoting *Bryan County*, 520 U.S. at 412), because deployment of a bite-trained dog is highly likely to cause significant injury or death.

"The force of a police dog's bite is between 1,200 and 2,000 pounds per square inch." *Vathekan*, 154 F.3d at 173 n.3 (citing Note, "*When K–9s Cause Chaos—An Examination of Police Dog Policies & Their Liabilities*," 11 N.Y.L. Sch. J. Hum. Rts. 279, 296 (1994)). "This amount of force is comparable to an automobile wheel running over a body part." *Melgar*, 593 F.3d at 362 (Michael, J., dissenting). Moreover, because such a dog is trained to bite and hold the victim until commanded to release, regardless of what the victim does, "*Injury is almost inevitable*." Hutson, *Law Enforcement K–9 Dog Bites: Injuries, Complications and Trends,* 29 Annals of Emergency Med. 637, 638 (1997) (emph. in orig.).

Here, the County and Sheriff Hamilton were well aware that every time an officer deploys a bite-trained dog, there is a significant risk that the dog will cause serious injury or death. DKT. #1 at 3. But the County and Sheriff Hamilton, with deliberate indifference to Roehm's constitutional rights, chose to disregard that risk and not properly train and supervise

Deputy Moore, even though it was obvious that he was highly likely to inflict the particular injuries Roehm suffered. Their failure to train and supervise was the moving force behind her constitutional injury. *Id*. at 7. Roehm thus has sufficiently pleaded a claim for failure to train and supervise, and at worst defendants merely raise fact issues to be decided at trial.

IV. **ROEHM PROPERLY ALLEGES A DUE PROCESS VIOLATION BASED ON SPECIAL RELATIONSHIP.**

Roehm also states a claim for a due process violation based on special relationship, in that Deputy Moore and the County completely restrained and then failed to protect her from serious injury. When the State has so restrained the liberty of an individual that it renders her unable to care for herself, it has a special relationship with the individual and thus an affirmative duty to protect her. *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). Again, intent does not factor into this claim. Rather, "it is the State's affirmative act of restraining the individual's freedom to act on his own behalf" that triggers the protections of the Due Process Clause. *Id*. at 200. Roehm has properly alleged that the County and Deputy Moore restrained her freedom to act on her own behalf, based on the bite-trained dog preventing her from exiting the barrel. DKT. #1 at 4, 8.

Defendants do not challenge that Roehm could leave the barrel at any time after Deputy Moore instructed the County's dog to find and seize her. Instead, they argue that she was not under arrest or in custody. Not only does their argument give rise to fact questions—to include whether and to what extent her liberty was restrained and whether she was held against her will—but it is misplaced, because they mischaracterize the requirements to prove a violation of due process based on a special relationship. Indeed, although defendants argue that the Fifth Circuit has clarified that a constitutional violation based on a special relationship "applies only in extreme situations" and lists these exclusive circumstances as "(1) incarceration for prisoners or

pretrial detainees, (2) involuntary institutionalization, and (3) the placement of children in foster care," Motion at 13, the case defendants cite, *Griffith v. Johnston*, does not restrict application of special relationship to those situations. 899 F.2d 1427, 1439 (5th Cir. 1990).

Rather, *Griffith* recites the proper standard and then provides examples of other courts that have found constitutional violations of rights under this claim. In fact, contrary to defendants' assertions, *Griffith* cites to a Seventh Circuit case, *White v. Rochford*, which concludes that a complaint stated a constitutional violation based on a police officer's abandoning of three children after the arrest of their uncle—a situation not involving incarceration, foster care, or institutionalization. *See* 592 F.2d at 386. Here, Roehm's liberty was restricted to the confines of a <u>barrel</u>—confines much smaller than even a jail cell—amounting to a restraint of liberty so severe that it required the County and Deputy Moore to protect her from their self-created peril, a bite-trained dog. In short, Roehm was in Deputy Moore's custody, and he and the County failed to provide her with reasonable safety after taking her into custody.

V. **ROEHM ALSO SUFFICIENTLY ALLEGES A DUE PROCESS VIOLATION BASED ON STATE CREATED DANGER.**

Roehm's complaint establishes, and defendants do not contest, that she meets all of the elements to establish a due process claim based on the state created danger theory. Defendants attempt to argue that because the Fifth Circuit has not officially adopted the theory—because no case has yet met the elements established by that Court—that this somehow bars her claims. In fact, the Fifth Circuit has previously vacated grants of dismissal on this theory. In *Scanlan v. Texas A&M University*, the Court held that "the district court should have concluded that the plaintiffs stated a section 1983 claim under the state-created danger theory," and reversed the district court's grant of a motion to dismiss. 343 F.3d 533, 537-38 (5th Cir. 2003). *Scanlan*

shows that simply because the Fifth Circuit has not officially adopted this theory does not mean claims alleging this theory must be dismissed.

Rather than require dismissal of all suits asserting the state created danger theory, the Fifth Circuit has denied relief based on this claim simply because no case has yet satisfied the elements. Indeed, the decision defendants cite, *Doe ex rel. Magee v. Covington County School District*, states "We decline to use this en banc opportunity to adopt the state-created danger theory in this case because the allegations would not support such a theory." 675 F.3d 849, 874 (5th Cir. 2012) (en banc). Specifically, the Court held that "the Does' allegations cannot make out a state-created danger claim, as they do not demonstrate the existence of 'an immediate danger facing a known victim.'" *Id.* at 866. In contrast, Roehm has alleged that the County and Deputy Moore knew of the existence of an immediate danger (a bite-trained dog) facing a known victim (an innocent citizen). DKT. #1 at 4-5. Indeed, they do not contest that her allegations satisfy the requisite elements. And, as shown above, her constitutional right to bodily integrity was established at the time of her injury. Thus, unlike in *Doe*, Roehm properly states a claim for a due process violation based on a state created danger.

Moreover, the Fifth Circuit has established elements for this claim, stating that the state-created danger theory requires a plaintiff to show: defendants used their authority to create a dangerous environment for the plaintiff; and they acted with deliberate indifference to the plight of the plaintiff. *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 201 (5th Cir. 1994). Therefore, if Roehm's complaint alleges facts that satisfy those elements, dismissal would be improper. And defendants do not contest that she has pleaded specific facts and harm that satisfy those elements.

Defendants argue that there is no *respondeat superior* liability in §1983 actions, Motion at 15, but Roehm does not seek liability on this basis. Instead, she has alleged that it was the County's own policy and practice of using bite-trained dogs that was a moving force behind the constitutional violation. The County does not contest that Roehm has properly alleged and supported her claim in that regard. Therefore, defendants' argument fails.

Finally, even though the Fifth Circuit has not yet formally adopted the state created danger theory, defendants are incorrect that they would automatically be entitled to qualified immunity. Indeed, there is no case law or other source that would suggest that it would be reasonable to deploy a bite-trained dog against an unarmed and non-dangerous civilian who, by state action, was placed and left helpless in a barrel. *See, e.g.*, *McDonald*, 966 F.2d at 295. Therefore, "it would [not] be reasonable for an officer to erroneously believe that his conduct was reasonable," *Lytle*, 560 F.3d at 410, regardless of preexisting case law.

## VI. ALTERNATIVELY, IF THE COMPLAINT IS DEFECTIVE, ROEHM SHOULD BE GIVEN AN OPPORTUNITY TO AMEND.

Roehm properly has alleged violations of her constitutional rights. But even if some part of her complaint is defective, she should be given the chance to amend. If a court finds that dismissal of a claim is warranted under Rule 12(b), it normally will exercise its discretion to allow leave to amend to cure pleading defects. *See* FED. R. CIV. P. 15(a)(2). Leave to amend shall be freely given when justice so requires. "In the context of motions to amend pleadings, 'discretion' may be misleading, because Fed. R. Civ. P. 15(a) 'evinces a bias in favor of granting leave to amend.'" *Martin's Herend Imports v. Diamond & Gem Trading*, 195 F.3d 765, 770 (5th Cir. 1999). "Indeed, 'unless there is a substantial reason,' such as undue delay, bad faith, dilatory motive, or undue prejudice to the opposing party, 'the discretion of the

district court is not broad enough to permit denial.'" *Id*. (cite omitted). Accordingly, even if Roehm's complaint is defective as to any claim, she should be given an opportunity to replead.

## CONCLUSION

For these reasons, Roehm respectfully requests that the Court deny defendants' motion to dismiss in its entirety and grant her any other appropriate relief.

Respectfully submitted,

/s/ Kevin J. Terrazas
R. Paul Yetter
State Bar No. 22154200
Kevin J. Terrazas
State Bar No. 24060708
YETTER COLEMAN LLP
221 W. 6th Street, Suite 750
Austin, Texas 78701
(512) 533-0150
(512) 533-0120 (Fax)

*Attorneys for Plaintiff Susan E. Roehm*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of September, 2012, a true and correct copy of the foregoing was filed electronically and notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

David Escamilla
Sherine E. Thomas
Elaine A. Casas
Jennifer Kraber
Travis County
P.O. Box 1748
Austin, Texas 78767

/s/ Kevin J. Terrazas
Kevin J. Terrazas